Steven GEORGE, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (CONWAY CENTRAL EXPRESS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 21, 2005.

Decided March 29, 2005.

Alexander J. Pentecost and Amiel B. Caramanna, Jr., Pittsburgh, for petitioner.

Harry W. Rosensteel, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Stephen George (Claimant) petitions for review of the September 20, 2004, order of the Workers' Compensation Appeal Board (WCAB) that affirmed the decision of a workers' compensation judge (WCJ) denying the reinstatement petition filed by Claimant against Conway Central Express (Conway). We affirm.

On July 18, 1996, Claimant suffered a work-related injury to his head and neck during the course of his employment with Conway. Claimant received $401.04 per week in total disability benefits pursuant to a notice of compensation payable (NCP) issued by Conway, describing Claimant's injury as a laceration/contusion, and benefits were suspended upon Claimant's return to work on July 29, 1996. Claimant left his employment with Conway in 1997 and began working for JEM Industries (JEM). On October 7, 1997, Claimant suffered a work-related injury to his head, thoracic spine and left knee. Claimant began receiving weekly total disability benefits of $350.53 pursuant to an NCP issued by JEM, and he has not worked since October 7, 1997. (WCJ's Findings of Fact, Nos. 1–2, R.R. at 80.)

Claimant underwent three surgeries on his knee, performed on February 4, 1998, August 5, 1998, and July 14, 1999. Meanwhile, Claimant had been experiencing neck pain, headaches and numbness in his hands and arms ever since his July 1996 injury at Conway. Claimant's headaches

and neck pain progressively worsened, and Claimant underwent surgery on his neck on February 11, 1999. (WCJ's Findings of Fact. No. 9 e-g, R.R. at 82–83.)

Thereafter, Claimant filed claim, reinstatement and review petitions against Conway, asserting that: 1) effective February 11, 1999, Claimant's 1996 work injury resulted in a renewed period of total disability; 2) the original NCP should be amended to include neck injuries; and 3) the surgery related to the neck injury resulted in a disfiguring scar. Claimant also filed claim and review petitions against JEM, alleging that, in addition to the knee injury, the October 1997 work injury also caused a neck injury and resulting scar. Conway filed a joinder petition against JEM, asserting that Claimant suffered new injuries or aggravation to his head and neck on October 7, 1997. JEM filed a modification petition, asserting that part-time suitable employment was offered to Claimant. All parties filed timely and responsive answers to the foregoing petitions, denying the material allegations contained therein, and the petitions were consolidated for hearings before the WCJ. (WCJ's Findings of Fact, Nos. 3–6, R.R. at 80–81.)

By decision and order dated August 21, 2000, (R.R. at 78–98), the WCJ found that,

effective February 11, 1999, Claimant suffered a recurrence of total disability associated with his neck surgery that was causally related to the July 1996 work injury suffered during the course of Claimant's employment with Conway. The WCJ found that Claimant's October 7, 1997, work injury suffered during the course of his employment with JEM did not constitute a substantial contributing factor to Claimant's cervical injury or related disability, but only resulted in the left knee injury. The WCJ further found that each of the work injuries "mutually preclude[s] the Claimant from performing either of his pre-injury positions of employment" and that each work injury is "mutually and equally responsible for the Claimant's continuing disability." (WCJ's Findings of Fact, No. 17a, d, and e, R.R. at 91.) The WCJ determined that Claimant was entitled to benefits based upon his average weekly wage at the time of his July 1996 injury and apportioned responsibility for payment between Conway and JEM on a pro rata basis, based upon Claimant's earnings with each employer. As a result, Conway was ordered to pay $213.88 and JEM $187.16 in weekly benefits.[1]

In October 2002, JEM filed a modification petition, which was subsequently amended upon petition of the parties to a petition for approval of a Compromise and

---

1. See section 322 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 677, which provides that, where an employee suffers from more than one injury while in the employ of more than one employer, payment of workers' compensation benefits may be apportioned on a pro rata basis.

Although none of the parties appealed from the WCJ's August 21, 2000, decision apportioning benefits, we believe that the apportionment of benefits ordered in 2000 is in conflict with our supreme court's decision in *L.E. Smith Glass Co. v. Workers' Compensation Appeal Board (Clawson)*, 571 Pa. 594, 813 A.2d 634 (2002), which is factually similar to

the present case. In *Clawson,* our supreme court reversed an order apportioning liability where the claimant had suffered two separate work injuries, each of which was totally disabling. Noting that, in workers' compensation cases, disability is synonymous with loss of earning power, the court held that a claimant who already is receiving total disability benefits for one injury is not entitled to benefits for the recurrence of a prior injury because the recurrence causes no additional wage loss. Like the claimant in *Clawson,* Claimant was receiving total disability benefits from JEM for the 1997 knee injury at the time he alleged a recurrence of the 1996 neck injury and/or a new injury to his neck.

Release Agreement (C & R). Pursuant to the C & R, Claimant received a lump sum of $100,000 in exchange for his release of JEM from any and all claims for wage loss or medical benefits arising out of the October 7, 1997, work injury. The C & R was approved by order dated March 27, 2003. (WCJ's Findings of Fact, No. 4, R.R. at 10.)

On April 24, 2003, Claimant filed a reinstatement petition against Conway, seeking reinstatement of total disability benefits for his 1996 work injury effective as of the date of execution of the C & R. The parties stipulated that Claimant was not alleging any change in condition with respect to either of his work related injuries and that the only issue to be resolved was whether, as a matter of law, Claimant was entitled to a reinstatement of total disability benefits for his 1996 injury as a consequence of the C & R releasing JEM from its obligation to pay benefits for the 1997 injury. (WCJ's Findings of Fact, Nos. 5, 7, R.R. at 10–11.)

The WCJ determined that Claimant's release of JEM had no effect on Conway's proportional liability, and the WCAB affirmed. The WCAB noted that Claimant's disability continued to be the result of both work injuries, and both employers would have continued to be responsible for payment of a pro rata share of compensation if Claimant had not agreed to forego weekly payments from JEM in exchange for a lump sum payment. The WCAB concluded that where the only change in circumstances was Claimant's agreement to settle with JEM, Claimant was not entitled to additional payments from Conway.

On appeal to this court,[2] Claimant argues that he met his burden of proving entitlement to reinstatement, i.e., that his

earning power is once again adversely affected by his disability through no fault of his own and that the disability that gave rise to his original claim continues. Claimant asserts that, because the WCJ found each employer to be 100% responsible for Claimant's disability and JEM is no longer in the case, Conway is responsible to pay the full amount of Claimant's total disability compensation.

Claimant cites no authority for these arguments, and we are not surprised, since there is nothing in workers' compensation law or civil law that sanctions the windfall Claimant seeks. Therefore, Claimant is not entitled to a reinstatement of total disability payments from Conway solely on the grounds that he voluntarily extinguished his claim against JEM.

Accordingly, we affirm.

### ORDER

AND NOW, this 29th day of March, 2005, the order of the Workers Compensation Appeal Board, dated September 20, 2004, is hereby affirmed.

---

2. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.